THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAMÓN BELÉN, MIGUEL JUSINO, FAUSTO JUSINO, and JOSÉ A. LÓPEZ, Defendants and Appellants.

Nos. CR-68-50,      Decided November 14, 1968.
CR-68-53.

*Ramón Torres Rodríguez* for appellants. *Rafael A. Rivera Cruz, Solicitor General, J. F. Rodríguez Rivera, Deputy Solicitor*

*General,* and *Federico Rodríguez Gelpí, Assistant Solicitor General,* for The People.

PER CURIAM: In the above-entitled cases we allowed appellants to submit one brief for all the cases because they are interrelated; because the conviction of all the appellants is based on the testimony of the same undercover agent; because the same offense is involved in all the cases.

Informations for violation of § 4 of Act No. 220 of 1948 (Bolita Act—33 L.P.R.A. § 1250) were filed against defendants. They were tried and convicted on April 28, 1967 in the Superior Court, Mayagüez Part, and sentenced to serve six months in jail in each case. Ramón Belén, Fausto Jusino, and José A. López, were charged with one violation each. Two violations were charged against Miguel Jusino.

Appellants allege that the trial court erred (1) in finding defendants guilty with insufficient evidence and in not granting them the benefit of a reasonable doubt; (2) in finding Ramón Belén, José A. López, and Miguel Jusino guilty on the basis of an amended complaint not ordered or authorized by the court; and (3) in not complying with Rule 38(b) of the Rules of Criminal Procedure which orders a new arraignment when the information is amended, thus depriving appellants of their right to make the corresponding pleas.

In the cases of appellants Belén, Jusino, and López, informations were filed for the *possession* of bolita material and for the sale of a certain number to be used in said unlawful game. After arraignment and after appellants pleaded not guilty, the prosecuting attorney filed a motion alleging that his evidence only established the sale of the bolita number. The amended information charging each one with the sale in question appears in the record of each case.

The two assignments based on the fact that the amended information was not authorized by the court and on non-

compliance with Rule 38 (b) of the Rules of Criminal Procedure lack merit.

■ In the original information the aforesaid three appellants were charged with *possession and sale* and in the amended information they were charged with the *sale* only. Therefore, from the very original information appellants were informed that they were accused of the sale of bolita numbers. So that the amendment was not a cure of a substantial defect, since there was no omission of something essential or a new offense. Actually appellants were being benefited since under the amended information they were being charged only with the *sale*, and not the *sale and possession* alleged in the original information. Section 4 of the Bolita Act contains several modalities on the commission of the offense. Two of the modalities having been charged against them in the original information, the evidence on one of the modalities charged was sufficient to support a conviction. *People* v. *Matos Pretto*, 93 P.R.R. 111, 116 (1966).

■ In connection with the previous authorization, although in the record there is no pronouncement of the magistrate to that effect, it appears from the record that the prosecuting attorney filed a motion requesting leave to file the amended informations; that they were assigned the same number as the original informations and that the court continued the proceedings without any objection of the interested party. It is inferred therefrom that the court authorized the filing of the amended informations. *People* v. *Morales*, 79 P.R.R. 569 (1956). Since it was not a question of a substantial amendment, a new arraignment was not needed. Rule 38 (b) of the Rules of Criminal Procedure makes mandatory the new arraignment only if a substantial amendment to the information is involved. As we have shown, the amendments to the informations were not of a substantial nature

but only the elimination in the information of one of the two modalities originally charged.

As to the case against Ramón Belén, the undercover agent testified that the purpose of undercover agents is to obtain evidence against the violators of the Bolita Act; that he has worked in the area of San Germán, Sabana Grande, Yauco, and Guánica, for three years; he has filed 186 cases; that on November 25, 1966 at about 2:30 p.m. he was travelling in the vehicle driven by appellant Ramón Belén, from Maginas Ward of Sabana Grande, to the town of Sabana Grande; that said automobile is a 1966 Ford, beige top and the rest brown, public license plate 200-787; that other persons travelled in the automobile; that the witness was in the front seat by the side of appellant; that when they were going by kilometer 217.6 of Road No. 2, appellant told him that he had 29 fractions of number 573; that the witness told him that he was going to wager 13 fractions of that number; that then they arrived at Sabana Grande; that he paid 15 cents for the trip and appellant collected $1.04 for the fractions he had sold to him; that appellant did not show any list nor the witness request any receipt because his identity would be discovered. Upon alighting from the car the witness went to the men's room of a restaurant and took notes in a small notebook. He had the small notebook at the trial. Then he submitted a report of the violation of the law. He testified that he was wagering in connection with the last three numbers of the first prize of the lottery.

Appellants invoke *People* v. *García*, 92 P.R.R. 557 (1965), where in a footnote at page 561 we said:

"In the cases generally prosecuted against the sales agents of numbers of the *bolita* game, the *bolita* agent jots down in his list the number gambled. Usually the undercover agent sees when the number is jotted down and sometimes he receives a receipt of the bet. When he testifies at the trial, he either presents the receipt or states that he saw the agent jotting down the number in his list. But in the present case the police officer does not

testify that defendant had jotted the number down. He only avers that defendant told him that he had gambled No. 413 and that by virtue of the exchange agreed upon the undercover agent obtained the 'right' to receive the *bolita* prize in the event the number turned out to be the winning number. . . ."

The footnote of *People* v. *García, supra,* refers to the fact that we did not decide in that case, because there was no need, whether that evidence was sufficient to punish.

In the case of appellant Ramón Belén, the witness not only identified the automobile where he was travelling but also testified about other persons who travelled there and about the position he occupied with respect to appellant; the place where the offer took place and the place where the transaction was performed, the details of the offer; the payment for the trip and the fact that the witness forgot to pay for the numbers wagered, as well as the collection, on the part of appellant, of the money ($1.04) and the notes he took when he went to the men's room of the restaurant. It should be noted that in this case substantial evidence was produced in excess to that mentioned in footnote 1 of *People* v. *García, supra,* for which reason we are not confronting in this case an evidentiary situation similar to that indicated in the said footnote.

Two informations were filed against Miguel Jusino, one for the possession of the material and sale of bolita number on September 25, 1966; the other as to the sale of bolita number on October 11, 1966. As to the first one the agent testified that he was in Rayo Guaras Ward of Sabana Grande at about 5:45 p.m., in front of Ramón Belén's residence. Miguel Jusino arrived and told the agent not to wager with Ramón Belén. Then he told him that he had some bolita numbers on sale and from those he had he offered one to the agent. The number was 669 and appellant offered him 10 fractions, which the agent accepted and bought. The agent continues testifying that appellant took out a list of

numbers in which other numbers besides 669 appeared and it had the number 10 at the right of the list. Appellant underscored 669 and wrote the agent's name to the right of the number 10 which was to the right of the first number. Said list was "more or less like a notebook page, the numbers were of three figures with another two-digit number to the right." He did not give him any receipt and the witness did not request it. After the transaction the agent left and took notes in his notebook. Subsequently he submitted a report of this violation of the law.

With respect to the second information the agent testified that at about 5:30 p.m. he was passing near appellant Miguel Jusino's residence and saw him at the gate of his house. He stopped and they talked. Then appellant asked him whether the witness was going to wager a bolita number. The agent answered yes, if he had a low number. Appellant offered the 165, with ten fractions. The agent accepted the offer and appellant jotted down the number on *the palm of his hand* and told the agent that he jotted it down there because he had the list at home. Appellant did not give him any receipt nor did the agent request it. About five minutes after the transaction he took notes of the transaction and then submitted a report of violation of the law. He did not arrest appellant on those two occasions because his identity would be discovered. He was wagering on the two occasions in connection with the first prize of the lottery of Puerto Rico. He testified, further, that he worked as undercover agent for the police of Puerto Rico; that his purpose was to obtain evidence against the violators of the Bolita Act; he was assigned to San Germán, Sabana Grande, Yauco, and Guánica, that his investigation lasted about three years in that area and that he has filed 186 cases.

As to Fausto Jusino, charged with the possession of material and the sale of bolita number, the agent in question testified that on October 14, 1966 at about 7:30 p.m. he was

in Maginas Ward of Sabana Grande. There he saw Fausto Figueroa or Fausto Jusino (he knows him by the two names). That day the witness was in front of the medical dispensary. Fausto Jusino came and they talked about different things. Then appellant asked the witness whether he was going to make any wager that day. The witness asked him which numbers he had and appellant started mentioning numbers among which was 725. The witness liked that number and told him to wager it. Appellant took out a notebook page from his shirt pocket where some three-figure numbers were written, with another two-digit number to the right, he underscored 725 and the one to the right and wrote the witness' name to the right of the number. The witness paid for the number sold. Then appellant went away and the witness took notes of that transaction and subsequently submitted a report of violation of law. He did not request a receipt nor arrest him because his identity would be discovered. He also testified that he was employed as undercover agent, assigned to San Germán, Sabana Grande, Yauco, and Guánica, that the investigation had lasted for three years and that he had filed 186 cases, and that he was wagering in connection with the first prize of the lottery of Puerto Rico.

With respect to José A. López, charged with the sale of a bolita number, the agent testified that on November 25, 1966, at about 4:50 p.m. he was on the way out from Sabana Grande to Yauco, in front of a factory, the Defilló Lingerie, on the edge of the road. José A. López came and stopped a little farther on. The witness approached the appellant and asked him the time, in order to start a conversation and stayed talking with him; then he asked him whether he had bolita numbers for sale. Appellant answered that he had one but that it was for Carlos Soto. Then appellant kept thinking for a while and told the witness that if he was interested, he would sell it to him "because first come first

served." The witness accepted. Appellant was sitting in an automobile in which he came, he took out from the glove compartment a small green notebook, and on one of the pages where there were some written numbers he jotted down number 235 which he had sold to the witness. He described the automobile as a 1953 dark and light green Chevrolet, license plate 522-898. He did not request receipt nor arrest him because his identity would be discovered. He took notes of that transaction and then submitted a report of violation of the law. He testified that he was wagering in connection with the first prize of the lottery of Puerto Rico. He also testified that he is an undercover agent for the police, assigned to Sabana Grande, San Germán, Yauco, and Guánica; that he has worked there for three years and that he has filed 186 cases.

■ Appellants allege that the evidence presented by the People is insufficient. We do not agree. That evidence meets the requirements established in *People* v. *Ayala Ruiz*, 93 P.R.R. 686, 690 (1966). In his testimony the agent testified that in the five cases (a) he observed how appellants either jotted down the bolita numbers which the agent wagered on a notebook page or on the palm of the hand; (b) he took notes of those transactions on a notebook he had; (c) he identified correctly the automobiles and made reference to nearby persons; (d) he indicated the place, date, and hour on which he purchased the bolita numbers from each one of appellants; and (e) he revealed the term and duration of the investigation, the area covered, the results obtained, and other pertinent details.

In view of the foregoing, the judgments rendered in these cases by the Superior Court, Mayagüez Part, on April 28, 1967, must be affirmed.